# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE TRUMPETER SWAN SOCIETY, *et al.*,  )   Case No. 1:12-cv-929 (EGS)

)

Plaintiffs,  )

)

v.  )

)

)

ENVIRONMENTAL PROTECTION  )

AGENCY, *et al.*,  )

)

Defendants.  )

)

_____)

## DEFENDANT-INTERVENOR NATIONAL SHOOTING SPORTS FOUNDATION, INC.'S REPLY MEMORANDUM IN SUPPORT OF <u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

SUMMARY .............................................................................................................1

ARGUMENT ...........................................................................................................2

I.  EPA CORRECTLY EXERCISED ITS DISCRETION IN DENYING THE SERIAL 2010 SUBMISSION ..............................................................................2

    A.  CBD's wholly repetitive *2012 Submission* was not a "Petition" under TSCA........2

    B.  EPA's rejection of the 2012 Submission was not arbitrary or capricious. ..............4

    C.  CBD had access to the rulemaking process and judicial review ...........................5

    D.  CBD's *2101 Submission* is barred under principles of collateral estoppel .............6

II.  DISMISSAL OF CBD'S SUIT IS PROPER BECAUSE CONGRESS DID NOT PROVIDE EPA WITH JURISDICTION TO ADDRESS AMMUNITION .......................9

    A.  Introduction ...........................................................................................9

    B.  EPA lacks jurisdiction to regulate ammunition under TSCA ...............................10

    C.  If TSCA is not clear regarding the ban on regulation of ammunition, EPA's interpretation is due significant deference ............................................................12

    D.  The legislative history cited by CBD is irrelevant .................................................13

CONCLUSION........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Lands Alliance v. Norton,*
   242 F. Supp. 2d 1 (D.D.C. 2003) *vacated on other grounds,* 360 F. Supp. 2d 1
   (D.D.C. 2003) ...................................................................................................................3

*Astoria Fed. Sav. & Loan Ass'n v. Solimino,*
   501 U.S. 104 (1991)........................................................................................................14

*\*Chevron, USA, Inc. v. Natural Res. Def. Council,*
   467 U.S. 837 (1984)..........................................................................................................2

*Colo. River Cutthroat Trout v. Kempthorne,*
   448 F. Supp. 2d 170 (D.D.C. 2006) ................................................................................3

*CTIA-Wireless Ass'n v. FCC,*
   466 F.3d 105 (D.C. Cir. 2006) ........................................................................................4

*\*Ctr. for Biological Diversity v. Jackson,*
   815 F. Supp. 2d 85 (D.D.C. 2011) ..................................................................................2

*Ctr. for Biological Diversity v. Morgenweck,*
   351 F. Supp. 2d 1137 (D. Colo. 2004)............................................................................3

*Duncan v. Walker,*
   533 U.S. 167 (2001)........................................................................................................14

*Envtl. Def. Fund v. EPA,*
   82 F.3d 451 (D.C. Cir. 1996) ...................................................................................10, 14

*Envtl. Def. Fund v. Reilly,*
   909 F.2d 1497 (D.C. Cir. 1990) ......................................................................................5

*Federal Trade Comm'n v. Manager Retail Credit Co. Miami Branch Office,*
   515 F.2d 988 (D.C. Cir. 1975) ......................................................................................14

*GAF Corp. v. United States,*
   818 F.2d 901 (D.C. Cir. 1987) ........................................................................................7

*GTE Service Corp. v. FCC,*
   782 F.2d 263 (D.C. Cir. 1986) ........................................................................................5

*Martin v. Dep't of Justice,*
   488 F.3d 446 (D.C. Cir. 2007) ........................................................................................6

*McGee v. District of Columbia,*
646 F. Supp. 2d 115 (D.D.C. 2009) ...........................................................6

*Motion Picture Ass'n of Am., Inc. v. FCC,*
309 F.3d 796 (D.C. Cir. 2002) .................................................................3

*New Jersey v. EPA,*
517 F.3d 574 (D.C. Cir. 2008) ...............................................................12

*Parklane Hosiery Co. v. Shore,*
439 U.S. 322 (1979) ...............................................................................6

*\*Skidmore v. Swift & Co.,*
323 U.S. 134 (1944) ...............................................................................3

*Smalls v. United States,*
471 F.3d 186 (D.C. Cir. 2006) ...........................................................5, 7

*\*Taylor v. Sturgell,*
128 S. Ct. 2161 (2008) ............................................................................8

*Village of Bergen v. FERC,*
33 F.3d 1385 (D.C. Cir. 1994) ..............................................................12

*\*Watt v. Alaska,*
451 U.S. 259 (1981) .............................................................................14

**STATUTES**

15 U.S.C. § 2602.............................................................................9, 10

26 U.S.C. § 4181...................................................................................10

**RULE**

Fed. R. Civ. P. 12.............................................................................1, 16

**TREASURY DETERMINATION**

Rev. Rul. 68-463; 1968-2 C.B. 507 .......................................................13

**OTHER AUTHORITIES**

18A Charles Allen Wright et al., *Federal Practice and Procedure* § 4441 ...................................7

Restatement (Second) of Judgments § 33 (1982) ........................................6

## SUMMARY

Try as it might, CBD's response to the motions to dismiss cannot alter the two

fundamental propositions that each require dismissal of the Complaint.  First, EPA acted within

its discretion when it determined that the *2012 Submission* was not a valid "petition" but, at

most, a request to reconsider its denial of the substantially identical *2010 Petition.* Contrary to

CBD's assertions, CBD had every opportunity to litigate the merits of the *2010 Petition* in court.

CBD, however, ignored a mandatory statutory deadline which defines this Court's jurisdiction

and is now unwilling to accept the consequences of its failure.

Second, CBD cannot force EPA to regulate cartridges and shells under TSCA under the

guise of seeking to regulate the necessary components of cartridges and shells (*i.e.*, bullets and

shot).  CBD concedes that Congress did not give EPA the authority under TSCA to regulate

cartridges and shells.  The Agency's jurisdiction cannot turn on the semantics of whether EPA is

regulating lead bullets by prohibiting their use in cartridges, or regulating cartridges by

prohibiting their use of lead-containing bullets.  Because cartridges and shells are simply the sum

of their individual components (which include bullets and shot), forcing EPA to regulate each

individual component under TSCA would mean also mean that EPA must regulate cartridges and

shells themselves, a result that TSCA specifically prohibits.  Under CBD's logic EPA could

regulate the whole, *i.e.* cartridges and shells, by regulating its component parts, *i.e.* bullets and

shot, thereby evading the exemption set forth in TSCA.

CBD's claims should therefore be dismissed with prejudice under Fed. R. Civ. P.

12(b)(1) or, in the alternative, under Fed. R. Civ. P. 12(b)(6).

<u>**ARGUMENT**</u>

**I.    EPA CORRECTLY EXERCISED ITS DISCRETION IN DENYING THE SERIAL 2010 SUBMISSION**

    **A.    CBD's wholly repetitive *2012 Submission* was not a "Petition" under TSCA**

In its Response ("Resp.") at 6-12, CBD offers no substantive response to the question of whether CBD's wholly duplicative 2012 Submission, which merely re-pled issues previously resolved against CBD, failed to rise to the level of a "Petition" within the meaning of TSCA. CBD merely asserts that TSCA requires EPA to "grant or deny" a petition but fails to demonstrate that EPA was required to treat the 2012 Submission (which merely reargued its now-defaulted 2010 Petition) as a TSCA § 21 "petition" as opposed to, at most, a "request for reconsideration" of the denied 2010 Petition. As demonstrated in the motions to dismiss, EPA's determination that the 2012 Submission was not a new TSCA § 21 "petition" was reasonable and well within the Agency's discretion.

CBD's current effort to impose upon EPA their view of the TSCA § 21 procedure, pursuant to which they concede (Resp. at 7, n.1) that EPA would be obligated to review 98 identical submissions submitted serially thus requiring this Court to conduct a de novo review of 98 individual EPA determinations – one after the other, with each raising the very same issues – does not square with the statute itself, nor EPA's role in administering TSCA.

As this Court observed in round one of the *CBD Litigation*, "TSCA nowhere defines the term 'petition'" and there is no legislative history clarifying what the term might mean in the context of TSCA. *Ctr. for Biological Diversity v. Jackson*, 815 F. Supp. 2d 85, 92 (D.D.C. 2011) ("*CBD Litigation*"). Accordingly, where a term is ambiguous and undefined in a statute, under "step two" of *Chevron, USA, Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984) ("*Chevron"*), courts must defer to EPA's interpretation of what constitutes a "petition" under

Section 21 of TSCA and the Agency's management of that process unless the agency's interpretation is unreasonable.  *See Motion Picture Ass'n of Am., Inc. v. FCC*, 309 F.3d 796, 801 (D.C. Cir. 2002) (citing *Chevron*).[1]

Here, CBD, as Petitioner and lead counsel (but after recruiting various other groups), filed a second "Petition" asking EPA to initiate the *very same* TSCA Section 6 rulemaking to regulate bullets and shot containing lead, and seeking the same ban on lead bullets and shot requested in the *2010 Petition*.  EPA determined that there was no significant new information in the *2012 Submission* and rejected the submission in a letter to CBD explaining that, because the *2012 Submission* was "substantially the same as the petition to regulate lead bullets and shot submitted in 2010," under EPA's interpretation, the *Submission* did not rise to the level of a valid petition under TSCA.  *See EPA 2012 Letter*.  EPA, therefore, rejected the *2012 Submission* – including its rulemaking request – because it failed to present any "significant newly discovered, non-cumulative material" on the issue of EPA's authority to regulate lead shot and bullets.  *Id.*[2] EPA's interpretation of "petition" to exclude repetitive submissions raising issues already decided by the Agency was reasonable and should be accorded deference.  Where, as here, a party such as CBD simply adds plaintiffs to a list and submits petitions for rulemaking that are substantially identical to those already submitted to and resolved by the Agency, EPA reasonably

---

[1] Even if the Court applies the deference standard from *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944), EPA's interpretation certainly possesses the requisite "power to persuade."

[2] CBD's citation to *Ctr. for Biological Diversity v. Morgenweck*, 351 F.Supp.2d 1137 (D. Colo. 2004), *Colo. River Cutthroat Trout v. Kempthorne*, 448 F.Supp.2d 170, 177 (D.D.C. 2006), and *Am. Lands Alliance v. Norton,* 242 F. Supp. 2d 1, 16 (D.D.C. 2003) *vacated on other grounds,* 360 F. Supp. 2d 1 (D.D.C. 2003), is unavailing where EPA did not apply a standard "in excess of that established by TSCA."  First, EPA did not rely upon the doctrine of "administrative convenience" in denying CBD's request.  Rather, EPA provided an interpretation of a statutory provision. Second, as shown *supra*, TSCA provides no standard for determining what submission qualifies as a "Petition" and EPA's reasonable interpretation of the statute must be given deference under *Chevron*.

found that such cumulative submissions do not qualify as a valid "Petitions" under TSCA.[3]

### B.   EPA's rejection of the 2012 Submission was not arbitrary or capricious

Contrary to CBD's assertions (Resp. at 12-22), EPA's exercise of its discretion in rejecting the *2012 Submission* also was not arbitrary and capricious.  EPA explained in considerable detail its conclusion that the *2012 Submission* was substantially identical to the *2010 Petition*.  CBD's assertion (Resp. at 15) that it seeks "dramatically different remedies" in the *2012 Submission* than it had in the nearly identical ban CBD advocated for in the *2010 Petition* is contradicted by CBD's clear statement that "Petitioners believe the *necessary* and most effective regulation would be a *complete ban* on bullets and shot containing lead for use in hunting and shooting sports."  *2012 Submission* at p. 16 (emphasis supplied).  Thus, CBD's starting and ending point in the duplicative *2012 Submission* are the same as in the *2010 Petition*: a ban on the use of lead-containing ammunition by hunters and sports shooters.[4]  Further, because EPA denied the *2010 Petition* on the grounds that EPA lacked jurisdiction under TSCA to regulate ammunition, EPA reasonably concluded that the few additional studies accompanying the *2012 Submission* were irrelevant.[5]

Likewise, the fact that CBD rounded up "new petitioners" to sign on to the *2012 Submission* (Resp. at 17-18) shows only a transparent attempt by CBD to resuscitate its failed *2010 Petition*.  The additional organizations were simply listed by name with CBD identified as

---

[3] Any other reading of EPA's exercise of discretion would allow repeat Petitioners like CBD to essentially "re-open" a rulemaking (denied by EPA) where the Agency has not "actually reconsidered the rule" thus re-opening the question.  *See e.g., CTIA-Wireless Ass'n v. FCC*, 466 F.3d 105, 110 (D.C. Cir. 2006).

[4] CBD's concession in the *2012 Submission* that while they continue to advocate a complete ban, they also ask EPA to consider other measures that might be less than a ban, simply recognizes that they might not get the full remedy that they really want (*i.e.*, "we will take what we can get").  Nor is their recognition (Resp. at 17) that law enforcement and national defense may have special needs a "dramatically different remedy."

[5] CBD's argument (Resp. at 20-21) that EPA should consider the legislative history of TSCA, a statute enacted in 1976, "new information" to EPA -- the agency that has been administering TSCA for almost 40 years -- is absurd.

the sole contact (and counsel) for all petitioners, and brought nothing new to the *2012 Submission*.   Thus, EPA reasonably rejected the wholly duplicative *2101 Submissions* as not qualifying as a "Petition" and correctly denied the *2012 Submission*.[6]   As the District of Columbia Circuit has explained, agencies such as EPA enjoy considerable discretion in how they manage administrative proceedings under statutes entrusted to their care: "[i]t is not ours to say whether one procedure for dealing with a particular issue at the administrative level is more or less efficient than another. '[T]his court has upheld in the strongest terms the discretion of regulatory agencies to control the disposition of their caseload.'"   *GTE Service Corp. v. FCC*, 782 F.2d 263, 273 (D.C. Cir. 1986) (citations omitted).   EPA's denial was not arbitrary and capricious.

### C.   CBD had access to the rulemaking process and judicial review

This case does not raise questions about public access to rulemaking.   CBD had ample access to the rulemaking process but it is not entitled to relief on repetitive petitions raising issues that EPA fully adjudicated but which CBD defaulted on.   CBD asks this Court to countenance its attempts to avoid the consequences of its own actions.   CBD obtained full unobstructed judicial review and suffered no "bureaucratic lethargy."   EPA promptly responded to the *2010 Petition* and provided clear explanations for why it denied that petition.   CBD then sought judicial review of EPA's decision and, through CBD's own fault found their claims dismissed for lack of subject matter jurisdiction, which is a judgment on the merits for purposes of *res judicata. See Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006).

---

[6] Should this Court conclude that the *Skidmore* standard of review applies to EPA's decision, the facts demonstrate that EPA's reasoning regarding the *2012 Submission* is "persuasive." CBD's extensive discussion of *Environmental Defense Fund v. Reilly*, 909 F.2d 1497 (D.C. Cir. 1990) regarding different standards of review for petitions seeking to change existing regulations versus petitions for new rules is not relevant to these motions to dismiss, since that analysis in *Reilly* turned largely on the consequences of the availability of an administrative record on the standard of review. *Id.* at 1503.

CBD's purportedly strict textual analysis of § 21 of TSCA, stops short of the explicit statute of limitations provisions they now seek to circumvent. It is CBD's default and serial filings that are obstructive and unhelpful.

**D.     CBD's *2101 Submission* is barred under principles of collateral estoppel**

Finally, CBD's misguided attempt to re-litigate an issue it lost (through defaulting on a jurisdictional requirement) in 2010 flies in the face of principles of collateral estoppel. "Collateral estoppel, like the related doctrine of *res judicata*, has the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979); *see* Restatement (Second) of Judgments § 33 (1982) ("A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action."). Collateral estoppel (or issue preclusion) is meant to "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect and . . .prevent serial forum shopping and piecemeal litigation." *McGee v. District of Columbia*, 646 F. Supp. 2d 115, 123 (D.D.C. 2009).

This Court considers the following three factors in determining the preclusive effect of a prior decision: First, "the same issue now being raised may have been contested by the parties and submitted for judicial determination in the prior case"; second, "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case"; and third, "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (*quoting*

*Yamaha Corp. of Am. v. United States,* 961 F.2d 245, 254 (D.C. Cir. 1992)).

As discussed above, CBD's *2012 Submission* raises the identical claim as it raised in its 2010 petition: namely, whether EPA has jurisdiction under TSCA to regulate lead shot and bullets.  In 2010, CBD asserted that EPA should "issue a proposed rule under section 6(a) of TSCA" to regulate "lead ammunition (including bullets and shotgun pellets)" and specified that the proposed rule should "prohibit the manufacturing, processing, and distribution in commerce" of such ammunition.  *2010 Petition* at 59.  EPA denied that petition because EPA lacks jurisdiction to regulate lead in ammunition, and this Court dismissed CBD's challenge to that denial as untimely because CBD failed to adhere to TSCA's time limits.  CBD's failure to comply with TSCA's mandatory 60-day deadline for seeking review of the denial of its petition operated as a judgment on the merits for purposes of res judicata.  *See Smalls,* 471 F.3d at 192. The "clearly correct rule is that dismissal of a prior action as barred by the statute of limitations precludes a second action on the same claim in the same system of courts."  18A Charles Allen Wright et al., *Federal Practice and Procedure* § 4441.[7]

In 2012, in a blatant attempt to circumvent the dismissal of its first suit, CBD (after adding a number of proxy plaintiffs) filed a Submission with EPA identical in scope and requested relief to the *2010 Petition*.  Namely, CBD asserted that EPA should promulgate a regulation that regulates or prohibits the manufacturing, processing and distribution in commerce of lead ammunition including bullets and shotgun pellets.  CBD, therefore, should be precluded from litigating the exact issues it brought before this Court in 2010.  And CBD's recruitment and

---

[7] A dismissal for lack of jurisdiction precludes "relitigation of issues determined in ruling on the jurisdiction question."  18 Charles Alan Wright, *et al.*, Federal Practice and Procedure 4436 (1981); *GAF Corp. v. United States*, 818 F.2d 901, 912 (D.C. Cir. 1987).  Any reading of TSCA Section 21 as allowing an identical petition to be filed outside of the 60-day period would erroneously read Section 21's limitations requirement out of the statute.

listing of additional parties in its *2012 Submission* cannot avoid the preclusive effect of the 2010

decision.  In *Taylor v. Sturgell*, 128 S. Ct. 2161 (2008), the Supreme Court described six bases

for nonparty preclusion.  As the Court explained, under the fifth basis for nonparty preclusion, "a

party bound by a judgment may not avoid its preclusive force by re-litigating through a proxy."

*Id.* at 2173.  Under this category, "a person who did not participate in a litigation" but later

brings suit as a proxy or some type of designated representative of a person who was a party to

the prior adjudication, may be precluded.  *Id.*

 As demonstrated in the *2010 Petition* and *2012 Submission*, CBD served as the lead

plaintiff representing the collective interests of the 2010 and 2012 plaintiff groups, no group sued

independently of the collective group, and none of the substitute plaintiffs asserted any rights

distinctive from those of the collective groups or interests of the original plaintiffs. The substitute

plaintiffs did not offer any arguments (or harms) distinct from other plaintiffs and only CBD's

lawyer signed the complaints and pleadings.

 Although the Supreme Court's description of the fifth basis for non-party preclusion

appeared to presume that the party actually bound by the prior judgment would not blatantly join

(and manage, and run) a new lawsuit where it is obviously precluded, the Court made clear that

"a party bound by a judgment may not avoid its preclusive force by litigating through a proxy."

*Id.* at 2173.  But this is what CBD is attempting to do here.  The logical conclusion drawn from

CBD's litigation strategy is that, following its default and judgment in the 2010 litigation, the

new substitute plaintiffs were recruited by CBD as "proxies" for the very purpose of re-litigating

the TSCA issues decided by this Court and to avoid the preclusive effect of this Court's

judgment in order to argue (again) the issues from 2010.  This is exactly what the Supreme Court

explained could not happen.  The situation here is made more perverse because it is CBD – the

8

obviously precluded party – that brought the new suit and recruited proxy plaintiffs to try to avoid any preclusive effect.  Under *Taylor*, CBD (and its proxies) must be precluded from bringing this suit.

Therefore, this case satisfies all three elements for collateral estoppel.  First, CBD's first suit raised the same issue regarding EPA's jurisdiction to address lead under TSCA.  This issue was litigated to final judgment in CBD's 2010 suit.  And the record shows that the 2010 litigation provided CBD with a full and fair opportunity to litigate all issues.  Thus, there was no unfairness to CBD.

As demonstrated above, this Court should uphold EPA's reasonable interpretation of what constitutes a "petition" under TSCA, and likewise uphold EPA's determination that the *2012 Submission* was essentially a re-filing of the denied *2010 Petition* and thus was not cognizable as a "Petition" under Section 21 of TSCA.  In addition, CBD's suit should be dismissed under principles of collateral estoppel.

## II. DISMISSAL OF CBD'S SUIT IS PROPER BECAUSE CONGRESS DID NOT PROVIDE EPA WITH JURISDICTION TO ADDRESS AMMUNITION

### A. Introduction

As explained in NSSF's motion to dismiss, Congress expressly excluded ammunition from the jurisdiction of TSCA as made clear by the plain language of the statute, EPA's reasonable interpretation of TSCA, and relevant legislative history.  *See* NSSF Motion at 16-23.  In sum, we showed that TSCA prohibits EPA from regulating "any article the sale of which is subject to the tax imposed by section 4181 of the Internal Revenue Code of 1986."  15 U.S.C. § 2602(2)(B)(v) (also known as the firearms excise tax, or "FAET", the revenues from which go to the U.S. Fish and Wildlife Service, which in turn distributes the money to the States for fish and wildlife restoration).  Section 4181 expressly imposes the FAET upon shells and cartridges.

9

26 U.S.C. § 4181.  Thus, this Court should dismiss CBD's complaint because EPA cannot

regulate shot and bullets without regulating cartridges and shells, an action expressly prohibited

by Congress.  NSSF Mot. at 23-26.  We also showed that if the plain language of TSCA was not

enough, EPA's interpretation of TSCA should be upheld under *Chevron*.  Finally, we illustrated

that CBD's contrary view is simply not reasonable.   In response, CBD provides no persuasive

argument to the contrary.

### B.        EPA lacks jurisdiction to regulate ammunition under TSCA

CBD's argument concedes that the plain language of TSCA prohibits EPA from

regulating cartridges and shells, but argues at the same time that TSCA allows the Agency to

regulate bullets and shot.  Such a position is contrary to the statute, let alone common sense.

CBD agrees that EPA would be justified in claiming that the Agency lacks the authority under

TSCA (15 U.S.C. § 2602(2)(B)(v)) to regulate shells and cartridges (Resp. at 29).  Yet CBD

apparently believes that it can cleverly avoid this clear statutory bar by petitioning EPA to

regulate bullets and shot, and specifically not cartridges and shells.  *Id*.  Adopting CBD's theory

would effectively eliminate the statutory exemption, because each and every component of shells

and cartridges could be separately regulated under TSCA, while maintaining the fiction that the

sum total of those components, *i.e.*, the shells and cartridges themselves, remain unregulated.

*See Envtl. Def. Fund v. EPA*, 82 F.3d 451, 460 (D.C. Cir. 1996) ("EDF") (explaining that where

a literal reading of the statute would frustrate Congressional intent supporting it, courts must

look to the agency for an interpretation more true to Congress's purpose).

CBD's contentions require ignoring not only the language and intent in TSCA, but reality

as well.  CBD admits that bullets are "normally" part of a cartridge (apparently a recognition

that, prior to assembly, bullets remain separate components), but then attempts to place

10

significance on the obvious fact that a bullet is not a cartridge and that shot is not a shell,

asserting that "TSCA is not concerned with the metaphysical nature of objects."  Resp. at 29.

However, it is CBD that is engaged in metaphysics.  A cartridge by definition includes a

projectile (*i.e.*, a bullet); likewise, a bullet can only be used for its intended purpose if it is part of

a cartridge (*i.e.*, can be projected).  Thus, it is axiomatic that regulating the content and use of

bullets must, as a practical matter, require regulation of the design, manufacture and use of

cartridges and shells (*i.e.*, changing the bullet necessarily changes the cartridge).  Accordingly,

CBD's spin that the regulation of bullets and shot is not the regulation of cartridges is a fallacy.

CBD's surmise that regulating shot and bullets can be de-coupled from regulating shells

and cartridges is further discredited by the very relief CBD seeks.  The regulation CBD urges

EPA to adopt under TSCA specifically seeks to ban bullets and shot containing lead *used in*

*hunting and shooting sports*.  See *2012 Submission* at pp. 2, 4, 16, 18, 67, and 68.  There is only

one way that bullets and shot are "used" in hunting and shooting sports: they are discharged from

cartridges and shells used in firearms.  Indeed, all of the information contained in both the *2010*

*Petition* and the *2012 Submission* relate to the alleged impacts caused by bullets and shot

contained in cartridges and shells and discharged from firearms (the *2012 Submission* alone

contains more than 30 references to "spent" ammunition).  The regulatory relief CBD seeks is

aimed at bullets and shot <u>only</u> to the extent that they are components of cartridges and shells that

are <u>used</u> in hunting and shooting sports by being discharged from firearms.  CBD seeks

regulation of this chain of use; it does not seek regulation of bullets and shot stored in

warehouses, never to be used in the real world in cartridges and shells.  Thus, the relief  CBD

seeks is precisely the relief even they agree that EPA is barred by TSCA from providing:

namely, regulating the content and use of cartridges and shells.[8]

**C.      If TSCA is not clear regarding the ban on regulation of ammunition, EPA's interpretation is due significant deference**

This Court should reject CBD's efforts to force EPA to regulate ammunition under TSCA under the first step of *Chevron* because Congress directly addressed the precise question at issue by expressly excluding ammunition from EPA's regulatory authority under TSCA.  But CBD's contentions also fail under the second step of *Chevron*.  EPA, the agency charged by Congress with implementing TSCA, expressly determined that it does not have the jurisdiction to regulate ammunition under the statute, and that determination is due deference.  *Village of Bergen v. FERC*, 33 F.3d 1385, 1388 (D.C. Cir. 1994) ("We also reject the suggestion … that *Chevron* does not apply to an agency's determination of its own jurisdiction.  This court has recently held that such determinations fall under the *Chevron* umbrella.") (citing *Oklahoma Natural Gas Company v. FERC*, 28 F. 3d 1281, 1283-84 (D.C. Cir. 1994)).  EPA's reasonable interpretation that regulating bullets and shot is necessarily the regulation of cartridges and shells, and is thus outside of EPA's TSCA jurisdiction, warrants judicial deference even if this Court might have articulated a different explanation if it were writing on a blank slate.  *See Am. Fed'n of Gov't Employees, Local 446*, 475 F.3d at 355; *New Jersey v. EPA*, 517 F.3d 574, 581 (D.C. Cir. 2008).

CBD's reliance on various decisions of the Internal Revenue Service ("IRS") to try to undermine the plain language of TSCA and EPA's interpretation of the Act is likewise unavailing.  First, as shown, it is simply impossible to tax shells and cartridges without taxing

---

[8] CBD asserts (Resp. at 24) that because it petitioned to regulate "lead bullets and shot" not "lead shells and cartridges", because bullets and shot are not mentioned specifically in 4181, they are therefore not excluded.  First, this perverse argument ignores that shells and cartridges *include* bullets and shot.  And, second, if CBD is focused solely on bullets and shot that are not used (*i.e.*, shot) from shells and cartridges, it is difficult to understand how CBD has suffered any injury sufficient to demonstrate standing.  CBD is certainly not injured by bullets and shot sitting on shelves in stores or warehouses.  CBD suggests that is injured because once bullets and shot are, in fact, shot from shells and cartridges residual lead might leach and allegedly harm birds and animals.  If CBD is *not* alleging injury from bullets and shot used in shells and cartridges (as it suggests), it cannot demonstrate standing.

bullets and shot which comprise the component parts of shells and cartridges.  Thus, CBD's entire argument regarding "bullets and shot" vs. "shells and cartridges" is mere tautology.

CBD also misapprehends (Resp. at 26) the force of the IRS Rule it cites (Rev. Rul. 68-463, 1968-2 C.B. 507).  This very ruling makes clear that FAET applies to *all* "component[s]" of shells and cartridges that are sold in "knock down" (unassembled) kids.  *Id.*  The fact that the FAET tax applies to unassembled kits demonstrates that components that comprise shells and cartridges are indeed subject to the tax.  What CBD asserts is evidence that bullets and shot are not subject to the tax is merely an issue of timing: when bullets and shot are assembled in complete kits or finished cartridges and shells, which is their only intended use, the tax applies. Similarly, the only bullets and shells of concern to CBD in this case are those that have been assembled into cartridges and shells and been discharged by hunters and shooters.  Those are the only bullets and shot for which CBD seeks relief under TSCA, and the alleged injury to wildlife CBD claims is caused by this use is the sole basis supporting CBD's standing (see *supra* n.8) and CBD's serial petitions.  Their suggestion that they are wholly unconcerned with cartridges and shells is simply a smoke-screen to evade TSCA's purposes and language.

### D.      The legislative history cited by CBD is irrelevant

Arrayed against the plain reading of the statute, EPA's interpretation, and common sense, CBD deems a few lines of legislative history "dispositive" in showing Congress's intent that EPA regulate all components of shells and cartridges under TSCA.  Setting aside that where, as here, the statute is clear it is unnecessary and inappropriate to resort to a review of legislative history in this case, CBD errs in interpreting the legislative history.  As described in our motion (at 20-24) Congress enacted TSCA only after considering the issues of agency authority to regulate ammunition in the context of other agencies where Congress took vigorous action to

ensure that such agencies could not regulate ammunition.

Nowhere in TSCA does the statute suggest that EPA can regulate ammunition.  In fact, the House report cited by CBD makes clear that Congress did not intend for TSCA to "be used as a vehicle for gun control."  And CBD simply misapprehends the House legislative committee statement that TSCA "does not exclude from regulation under the bill chemical components of ammunition which could be hazardous because of their chemical properties."  As explained in NSSF's motion to dismiss, this language was included to ensure that EPA was not deprived of its general authority to regulate a chemical substance (such as lead) in contexts outside of the use of lead in ammunition.  *See EDF,* 82 F.3d at 460, n. 11 (explaining that legislative history cannot be used to "undermine the statute's language or the explicit delegation to the agency of" its statutory tasks).

CBD's contrary view must also be rejected because it would render the TSCA exemption for ammunition meaningless.  It is well settled that courts must seek to harmonize statutory provisions and read them in a manner that will "give effect to each if we can do so while preserving their sense and purpose."  *Watt v. Alaska*, 451 U.S. 259, 266-67 (1981).  Likewise, courts should "construe statutes, where possible, so as to avoid rendering [any part] superfluous . . .."  *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 112 (1991); *see also Duncan v. Walker*, 533 U.S. 167, 174 (2001); *Federal Trade Comm'n v. Manager Retail Credit Co. Miami Branch Office,* 515 F.2d 988, 994 (D.C. Cir. 1975).  Allowing EPA to individually regulate each component of ammunition means that the sum total of those regulations would be the regulation of the ammunition itself, and thus would completely contradict the text of the statute (and contradict CBD's own concession that EPA cannot regulate ammunition under TSCA).

The absurdity of this result is further illustrated by the fact that any relief that CBD hopes

to obtain through this litigation would not apply to finished cartridges and shells imported into the United States.  Even CBD concedes that EPA does not have the authority to regulate finished cartridges and shells under TSCA.  Therefore, CBD would have to agree that imported shells and cartridges could not be regulated by EPA under TSCA.  Thus, CBD would ask the Court to conclude that Congress intended that EPA could regulate under TSCA domestically manufactured cartridges and shells by regulating each of their component parts, but Congress was also determined to exempt imported ammunition from that same level of regulation.  Neither TSCA nor the legislative history can be read to support such an unreasonable result.

As shown, where Congress did not provide EPA with jurisdiction to regulate ammunition, CBD's *2012 Submission* simply misses the mark.  The language of TSCA, including the ammunition exemption, makes clear that EPA cannot regulate bullets or shot *or* cartridges and shells.  Even if the statute is not abundantly clear, EPA's interpretation of TSCA is reasonable and must be given great weight.  Furthermore, CBD's assertion that EPA can, in fact, regulate bullets and shot while at the same time being jurisdictionally barred from regulating cartridges and shells, is entirely unreasonable, particularly where CBD relies upon bullets and shot actually discharged from firearms using cartridges and shells in alleging that it has standing to bring this suit.

## CONCLUSION

For the foregoing reasons, this Court should dismiss CBD's Amended Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: September 24, 2012

Respectfully submitted,

/s/ Roger R. Martella, Jr.

Roger R. Martella, Jr. (Bar No. 976771)
Christopher L. Bell (Bar No. 412857)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Defendant-Intervenor*
*NATIONAL SHOOTING SPORTS*
*FOUNDATION, INC.*

*Of Counsel*
Lawrence G. Keane
General Counsel
National Shooting Sports Foundation
11 Mile Hill Road
Newtown, CT 06470-2359
(203) 426-1320

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2012, I electronically filed the foregoing

DEFENDANT-INTERVENOR NATIONAL SHOOTING SPORTS FOUNDATION, INC.'S

REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS

PLAINTIFFS' COMPLAINT with the Clerk of Court using the CM/ECF system which will send

notification of this filing to all attorneys of record.

/s/ Roger R. Martella, Jr.

Roger R. Martella, Jr. (Bar No. 976771)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005