UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TRUMPETER SWAN SOCIETY, ET AL, | . | DOCKET NUMBER: CA 12-929 |
| Plaintiffs, | . | |
| vs. | . | Washington, D. C. |
| | . | May 23, 2013 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL, | . | 2:00 P.M. |
| Defendants. | . | |

. . . . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE EMMET G. SULLIVAN
A UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:

ADAM F. KEATS, ESQUIRE
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street
Suite 600
San Francisco, California 94104
akeats@biologicaldiversity.org

JACLYN LOPEZ, ESQUIRE
CENTER FOR BIOLOGICAL DIVERSITY
P. O. Box 2155
St. Petersburg, Florida 33731
(727) 490-9190
(415) 436-9683 (fax)
jlopez@biologicaldiversity.org

WILLIAM J. SNAPE, III, ESQUIRE
LAW OFFICE OF WILLIAM J. SNAPE, III
5268 Watson Street, NW
Washington, D.C. 20016
(202) 536-9351
(415) 436-9684 (fax)
billsnape@safariclub.org

FOR THE DEFENDANT: JUSTIN D. HEMINGER, ESQUIRE
U.S. DEPARTMENT OF JUSTICE
Environmental & Natural Resources Division
601 D Street, NW
Suite 800
Washington, D.C. 20004
(202) 514-2689
(202) 514-8865 (fax)
justin.heminger@usdoj.gov

ANDREW SIMONS, ESQUIRE

FOR THE INTERVENORS: MICHAEL STEVEN SNARR, ESQUIRE
BAKER HOSTETTLER, LLP
1050 Connecticut Avenue, NW
Suite 1100
Washington, D.C. 20036
(202) 861-1710
(202) 861-1783 (fax)
msnarr@bakerlaw.com

ROGER R. MARTELLA, JR., ESQUIRE
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8097
(202) 736-8711
rmartella@sidley.com

ANNA MARGO SEIDMAN, ESQUIRE
SAFARI CLUB INTERNATIONAL
501 2nd Street, NE
Washington, D.C. 20002
(202) 543-8733
(202) 543-1205 (fax)
aseidman@safariclub.org

THE COURT REPORTER: SUSAN PAGE TYNER, CVR-CM
Official Court Reporter
United States District Court
333 Constitution Avenue, N.W.
Room 6523
Washington, D.C. 20001
(202) 354-3267

Computer aided transcript prepared with the aid of SpeechCAT.

**P R O C E E D I N G S**

THE COURTROOM DEPUTY: Your Honor, this is Civil Action 12-929, Trumpeter Swan Society, et al, versus United States of Environmental Protection Agency, et al.

Would counsel please come forward and identify yourselves for the record, please.

MR. KEATS: Thank you, Your Honor. Adam Keats for the plaintiffs.

THE COURT: Who are your colleagues at the table with you?

MR. KEATS: My apologies. With me is counsel Jaclyn Lopez and William Snape.

THE COURT: Good afternoon, welcome.

MR. HEMINGER: Good afternoon, Your Honor. Justin Heminger for the Department of Justice, representing defendants, and with me at counsel table I have Andy Simons from EPA's Office of General Counsel here in D.C.

THE COURT: All right.

MR. MARTELLA: Good afternoon, Your Honor. I am Roger Martella for the defendant intervenor, National Shooting Sports Foundation.

THE COURT: Thank you.

MS. SEIDMAN: Good afternoon, Your Honor. I am Anna Seidman. I represent defendant intervenors, Safari Club International.

MR. SNARR: Good afternoon, Your Honor. My name is Mike Snarr, and I represent the Association of Battery Recyclers.

THE COURT: All right. Let me invite government counsel to the microphone.

How do these folks get -- how do the plaintiffs get this issue back before the agency?

MR. HEMINGER: Your Honor, if you are referring to the procedural history here, Your Honor decided that --

THE COURT: I know what I decided. Just answer my question.

How do they get this -- the government is claiming that this is a reconsideration of something that was resolved by the court, and I am well aware of what I resolved. The question is, if they are not properly before the agency now, how in the world do they ever properly get before the agency again with this issue? That is the question.

MR. HEMINGER: Your Honor, the hypothetical would be circumstances that we do not have here. So it would be a situation where the Center had presented new evidence that was non-cumulative, that was changed circumstances. It might be a situation where there are --

THE COURT: So they are not forever barred from getting this issue back before the agency?

MR. HEMINGER: That is not what EPA said here, and I don't think that is the import of what EPA did.

THE COURT: So they would have to present the equivalent of what, changed circumstances? Is that right? That is one criteria.

MR. HEMINGER: That would be one that EPA would consider.

THE COURT: So they have multiple new parties here. Why isn't that enough? It's not the same parties. In fact, it's not -- my understanding is that it's not all of the same prior parties as parties plaintiff here. It is a couple of the plaintiffs plus many more new plaintiffs. I think there are what, 90 new plaintiffs or so.

MR. HEMINGER: I think 98.

THE COURT: Why isn't that enough?

MR. HEMINGER: Well, Your Honor, we think that is not enough because the Center has focused on which parties are different. We think that EPA correctly focused on which parties are the same, but there are two petitioners that participated in the first submission that have now participated in the second submission.

THE COURT: If they withdrew today, if they ran out of here saying, we are out of this lawsuit, would the plaintiffs properly be before the agency?

MR. HEMINGER: Your Honor, we think that this is a

totality of the circumstances situation, so one of the factors that EPA looked at was who participated in the first petition, and who participated in the second submission? But that is not the only factor that EPA considered.

THE COURT: Just focus on my question.

If they withdrew their participation in this lawsuit, would the remaining plaintiffs, parties plaintiff, be properly before the agency.

MR. HEMINGER: Your Honor, I can't -- that is a hypothetical, because it is not what we have here. So I cannot tell you what EPA would do in that situation.

THE COURT: I know it's not. I am trying to -- I'm asking these questions for a purpose though.

MR. HEMINGER: Sure.

THE COURT: If they withdrew -- if they stood up and withdrew and said, we are out of here. We are no longer associated with this case, and there are no longer any remaining original parties plaintiff in the prior litigation in this case, would the remaining parties plaintiff be properly before the agency?

I understand that it is a hypothetical. I am just trying to -- I'm asking these for a reason.

MR. HEMINGER: Sure, and I cannot tell you what EPA would do, but I can tell you that the factors that we look at is not just the parties. They would look at the

substance and contents --

THE COURT: You don't think you can give me an answer to that question?

MR. HEMINGER: I cannot bind the agency to say that if, in a hypothetical situation there were -- everything else being the same as we have here that --

THE COURT: Let me ask you this.

Suppose the plaintiff class consisted of entirely new parties who had nothing to do with the former litigation, would they be properly before the agency?

MR. HEMINGER: Your Honor --

THE COURT: The same argument. The same arguments raised, new parties -- completely new parties, no prior association with the previous litigation.

MR. HEMINGER: That would be a factor that EPA would consider, but I think that EPA would still be entitled to look at the substance and content of what they had submitted. Is it the same, or is it different?

THE COURT: Well, my question is, everything remains the same with the exception of the fact that all of the parties plaintiff are new. No prior -- I mean these are not trick questions. All the parties plaintiff are new. No association with the previous law suit.

MR. HEMINGER: I think that that would be a very different -- it would be a very different circumstance than

we have here, so I think that the EPA would have to consider that as an important factor, Your Honor.

THE COURT: All right. So then I assume that the answer to my first question is that if the two participants who participated in the previous litigation withdrew, then the remaining parties would be properly before the agency?

MR. KEATS: Your Honor, that would be a different case, and I am sorry that the agency would consider that as a factor, and very well could end up considering the substance.

THE COURT: I'm just trying to determine how these folks ever get their day before the agency. All they want is consideration by the agency. I recognize the original one was time-barred, and I said so, and that was not challenged in this circuit.

I will ask that question also of plaintiffs when it is their time.

Given the ambiguity in the statute, would it make more sense for the -- would it be more prudent for the agency to follow the plane letter of the law, which does not provide for petition for reconsideration, and grant or deny every petition that comes before the court?

I mean there is no standard for a petition for reconsideration or even classifying of a request that is a

petition for reconsideration. There is nothing like that in the regulation, is there?

MR. HEMINGER: There is not, Your Honor.

THE COURT: So why isn't it more prudent -- why shouldn't the agency just -- you know, just deal with each petition up or down and grant or deny each petition, because there is no precedent for this? I understand your argument, but there are no standards for it. I mean there is not --

MR. HEMINGER: Your Honor, we cited to two different sets of precedence. One would be the Walker versus EPA case.

THE COURT: An unpublished opinion from Texas.

MR. HEMINGER: And we have also cited to decisions from this circuit discussing an agency's inherent authority to reconsider its prior decisions.

THE COURT: Circuit opinions get my attention, they do. I will follow the circuit -- on occasion I am inclined to follow what my colleagues do elsewhere, circuit decisions.

So what is the authority there for considering this petition as one for reconsideration as opposed to a new one? Is it simply that the agency -- deference should be given to the agency's opportunity to determine its own jurisdiction? Is that the precedence?

MR. HEMINGER: We do think the City of Arlington informs what EPA did here, and that decision talks about how an agency gets deference even when it is interpreting a restriction or limit on its own authority that Congress has set. So we think that that is relevant.

THE COURT: Getting back, I guess, to my first question, where we were talking about different circumstances -- changed circumstances, the request here by plaintiffs is not verbatim the same as the prior request. It is different.

MR. HEMINGER: It is different.

THE COURT: The original one was a request for certain relief that is different from the request for certain relief here. So isn't that a change in circumstances that should mandate that the petition be treated as an original petition?

MR. HEMINGER: No, Your Honor. The relief requested is different, but the distinction is really without a difference on a substantive until level. In the first petition the petitioner has requested a rulemaking under Section 6(a) of TSCA to regulate -- or excuse me, to be in lead shot and bullets.

In the second submission they did alter their request to simply ask that EPA initiate a rulemaking, but in doing so they made it very clear in their second submission

that they were going to advocate for a complete ban on lead ammo and bullets, which is what they did in their -- the relief that they had requested in their first petition. So EPA looked at the difference in relief but found that it was really a distinction without a difference.

THE COURT: It is very confusing, because you very candidly told me that if these were entirely new parties then they probably would be able to present this argument, even though it is requesting, arguably, the same type of relief, and you would call the shots up or down on that new request.

MR. HEMINGER: We think the agency does have some discretion in administering this program. The example that the Center has used is, I believe, that 98 different parties could submit separate petitions, or at least that is import of their argument, that every party could submit the exact same document, and EPA would have to either accept it or deny it as a separate petition, and then each petitioner would get a separate judicial review, and EPA would simply have to put on blinders.

THE COURT: Do you have the authority to consolidate those identical petitions?

MR. HEMINGER: We think -- as Your Honor discussed in CBD 1, Vermont Yankee gives agencies inherent discretion to manage a program like this.

You know, EPA, again, did not say that whenever a petitioner has submitted another petition that they are simply barred. What EPA did here was look at the substance between the second submission and the first petition and found that there really was not any difference, that it was essentially a cut-and-paste job, and as a result it really did not make any sense to treat this as a separate petition under Section 21.

THE COURT: I guess I don't get it. I don't see the distinction. I mean if new parties could file this, this same petition, if brand-new parties could file it and the agency would make a call up or down on it, then what is the harm in making the call up or down on this one?

I mean it seems to me that the only reason then is because of the similarity or identity of the previous plaintiffs in the prior litigation, and that doesn't -- unless I'm missing something.

MR. HEMINGER: Here the line that the agency tried to draw was looking at all of the circumstances. So it is not just about the parties here. It is about -- and again, the Walker decision is not governing, but it informs what EPA did here.

THE COURT: I am not minimizing it. It is very interesting, and it is arguably persuasive, and it may ultimately carry the day for the government. I don't know

-- at least the rationale. It is not binding on the court, but at least the rationale.

MR. HEMINGER: Exactly, Your Honor.

The factors that EPA did look at are consistent with what Walker said.

THE COURT: Well, maybe I'm wrong. I thought you told me that if they were brand-new parties filing this that they would be entitled to an up or down call. I thought that's what you said.

MR. HEMINGER: Well, I can tell you -- I cannot represent what EPA would do, because that is not this case. This case goes so far over the line, Your Honor, because it's not about the parties.

It's also about the temporal relationship between the two submissions. It's about the content, the fact that over 380 of the citations from the first petition were also in the second submission. It is about the fact that EPA looked at -- to see if there was new information, if there were changed circumstances, and didn't find that.

So here you gave me a very specific determination on these set of facts, that there was no reason to treat this as a separate submission. But if you have a different situation where there are entirely separate parties, or new information, or a change in the temporal relationship -- it has been several years -- then that would be another reason

for EPA to not do what it did here.

THE COURT: But you just told me either or then. Either or any of those -- new parties, change of circumstance -- so my question -- and I'm just focusing on the new parties.

MR. HEMINGER: Sure.

THE COURT: The new parties in the same circumstances, they get their day in court -- I mean they get their day before the agency.

MR. HEMINGER: Well, Your Honor, in terms of a day in court --

THE COURT: No, not court. I'm not challenging the final decision, but they get their day before the agency as opposed to the agency saying, you know -- or doing the same thing there that it did here.

MR. HEMINGER: The other factor here, Your Honor, is your prior decision. So we think that EPA would be entirely -- it would be appropriate if entirely new parties simply take what was submitted here, the second submission, and just take that document and resubmit it to the agency, for the agency to look back at the history here, look back at the procedures that it did follow with respect to the first petition.

THE COURT: What would you call it? You wouldn't classify it as a petition for reconsideration under those

circumstances, would you, because they had no prior involvement?

MR. HEMINGER: That is correct, Your Honor.

THE COURT: So they would be entitled to up or down calls then, right?

MR. HEMINGER: Again, all I can tell you is that this is a situation where it was appropriate for EPA to treat this as a motion --

THE COURT: I mean there are only -- there are a finite number of options -- either grant the request, deny the request, or treat it as one for reconsideration of a prior request, right?

MR. HEMINGER: Yes, Your Honor.

THE COURT: All right. So would you agree that it could not be reconsideration of a prior request because they have not made a prior request?

MR. KEATS: That is correct, Your Honor.

THE COURT: Okay. So there are only two other options, either grant it or deny it, and they get their day before the agency, right?

MR. HEMINGER: It would seem that that would make sense.

THE COURT: Right.

MR. HEMINGER: Yes.

THE COURT: Unless there are some other options

that I am not aware of.

MR. HEMINGER: Yes, Your Honor.

THE COURT: All right. So then you would have to analyze everything they say. You would have to analyze all of the evidence they submit and issue a ruling that they could challenge, if appropriate, within the statutory timeframe.

MR. HEMINGER: I think that is correct. You would still be back at looking at the substance and content of what was submitted.

THE COURT: Right.

MR. HEMINGER: And here there was a clear record that EPA had already looked at that.

THE COURT: So on the one hand, then, we have this present petition before the agency that has a couple of the same parties arguably asking for reconsideration for a whole host of -- 90 plus new people who said, you know, we weren't a part of that. We are not asking for any reconsideration. We want our day before the agency.

So I am just trying to determine why that new subset of new people would be treated the same way as the frequent filers, because they are not --

MR. HEMINGER: Your Honor --

THE COURT: -- the new folks are not asking for reconsideration. And since we know that new parties, as you

indicated, filing an identical petition wouldn't be treated as asking for reconsideration for something they did not file, why should the new parties here be put in the same category as the two who remain who arguably are asking for reconsideration?

In other words, why don't you bifurcate them out? For those other two who are frequent filers -- I wish I had some water to offer you. I am sorry. Normally we have some up here. If I had some I would give it to you -- actually, I probably wouldn't. I would probably keep it until I start coughing, but if you would like to get some water, that is fine. You can bring it back if you would like to.

But do you see what I'm saying? Why not bifurcate it out and treat previous two -- you know, they are out of luck. To the extent that two of the former parties request the equivalent of reconsideration, their request is denied. But for the new ones, treat them differently, because you have to treat new ones differently.

You just told me there's only grant or denial for the new ones because they are not seeking reconsideration of anything.

MR. HEMINGER: Your Honor, I think your concern is answered in this way. The 98 other participants in the second submission knew or certainly should have known what was going on here.

The Center had been in the driver's seat in the first petition, and there is no indication that they were not in the driver's seat -- there is no indication that they were not in the driver's seat in the second submission. In fact they identified themselves, the Center did, as the lead petitioner in the second submission.

So it is clear that they were driving the second submission, and the substance and content were almost identical. So what happened here was that you had 98 organizations that are essentially me, too.

Really, it would be too easy to circumvent the 60 day jurisdictional time limit in Section 21(b)(4)(A) if, for example, one additional petitioner simply signs on to a new submission that is essentially the same as a prior submission.

It is simply too -- it is too easy, and there is no reason that the EPA should put blinders on because there happens to be one more petitioner on a separate submission, simply ignore the fact that it is a cookie-cutter example.

THE COURT: So when is it -- when is it more timely for the previous group to file? Are they forever time barred? I mean they waited four months or so before they filed?

MR. HEMINGER: Less than six months, Your Honor.

THE COURT: Less than six months. Well, I mean,

so when is it timely for them to come back with the same -- with the identical petition?

MR. HEMINGER: I hate to disappoint you, Your Honor, but again, I cannot answer how long is long enough. What I can say is that this was not long enough, that as a factor --

THE COURT: But then you agree then that there would be a point in time when they could?

MR. HEMINGER: There really --

THE COURT: Because you said that this is not long enough, which would suggest that they aren't there yet, but they could get there.

MR. HEMINGER: And the other -- possibly, Your Honor. But the other point is that if they simply wait seven months and then submit the exact same submission, then you know again, that would be a factor that EPA would look at, but if there is no change in circumstances, if there is no new evidence that would change what EPA did in the first --

THE COURT: Then it would probably be the same result if they wait two years, three years, four years.

MR. HEMINGER: Possibly. I believe that that is similar to what happened with Walker -- Doctor Walker in the Walker case. He submitted three different submissions, and EPA found --

THE COURT: And the third one was finally considered by the agency, wasn't it?

MR. HEMINGER: I believe it was, Your Honor, but --

THE COURT: So we know then that there could come a time when an identical petition could be ripe for consideration?

MR. HEMINGER: Yes, Your Honor.

THE COURT: But that sounds arbitrary though. If it is the petition and they wait longer -- if they wait two years and then they get their day before the agency, that suggests a certain arbitrariness though.

Walker was the identical petition, wasn't it, the third one that was the charm for the plaintiff?

MR. HEMINGER: I don't recall those were exactly identical, but it was very similar. Again, Your Honor, I think the point is that EPA looked at the totality of the circumstances, and I know in terms of drawing a line, all I can say is that EPA determined that this had crossed that line, that what was going on here was really no different than what this court addressed when it denied judicial review of the first petition, and there were no changed circumstances that would warrant EPA to reconsider what it had previously done.

THE COURT: The third petition in the Walker

litigation, which the agency considered as a cognizable petition, was filed four months after the court's ruling on the second petition, which was rejected, but over three years after the second petition was filed and denied.

So I mean, I don't know. So there is hope.

MR. HEMINGER: Yes, Your Honor.

THE COURT: Hope springs eternal, right?

MR. HEMINGER: Yes, Your Honor.

The other thing that I would point out in terms of judicial review, Your Honor -- even if the circumstances -- even if the EPA has determined that it has not been long enough, I don't believe that it would foreclose petitioners from challenging that under the EPA, which we think is the appropriate standard to apply here.

So it does not simply shut the door on them in terms of judicial review to insure that what EPA has done is reasoned and rational.

THE COURT: Meaning that they would -- so in other words there is another remedy -- there is another round for the court then, is that right?

MR. HEMINGER: I believe that is fair to say, Your Honor.

THE COURT: And that is consistent with doing what?

MR. HEMINGER: In challenge under the EPA, it is

EPA's decision to treat a subsequent submission as not a separate cognizable petition under Section 21.

THE COURT: Right. But that just presumes that they do not prevail in this litigation, correct?

MR. HEMINGER: Yes, Your Honor.

THE COURT: All right. The changed circumstances in the 2012 submission, plaintiffs requested that the agency initiate rulemaking to regulate lead shot and bullets as opposed to a nationwide ban, which is really pretty far-reaching, but maybe not.

Is there a difference between the relief there?

MR. HEMINGER: Your Honor, I think the relief that they requested in their first petition was the whole universe.

THE COURT: Right.

MR. HEMINGER: Most parties that appear before an agency recognize that they may not get the whole universe, but the petitioners under the second submission also indicated that they really wanted the whole universe again.

They just indicated that they were willing to start at initiating the rulemaking and simply advocate for that down the road. But this is still a request for a rulemaking -- to initiate a rulemaking under section 6(a) of TSCA, to regulate, if not to outright ban, lead shot and bullets.

So EPA did not find that to be a difference -- a substantive enough difference in relief to warrant that as a factor in determining whether these were separate submissions -- separate petitions.

THE COURT: I mean our system works at its zenith when people have the right to challenge decisions by all of us. Article III judges' decisions are challenged in the circuit, and sometimes the federal circuit. Agency decisions are reviewed for correctness, and that is all these folks want, is a basis to have the agency's decision reviewed.

So why are you being so resistant to that? That's all they want is their day in court.

MR. HEMINGER: Your honor --

THE COURT: Because they were time-barred the first time and there is nothing new here, right?

MR. HEMINGER: Your Honor, the decision was very clear on that point. We think that --

THE COURT: Could that decision have been challenged in the circuit?

MR. HEMINGER: Yes, Your Honor.

Effectively, if all you can do -- all you have to do is add a single party, or a new citation, or tweak the relief that you are requesting, and that automatically allows you to evade what -- the effect of the 60-day time

limit in 21(b)(4)(A), then we think that that really renders that time limit meaningless.

THE COURT: Is there a statute of limitations for a litigant to challenge an agency's decision?

MR. HEMINGER: As a general matter I am not sure, Your Honor. What I do know is in 21(b)(4)(A), if the agency does not act on a submission within -- I believe it is 90 days, then the petitioner is entitled to seek judicial review at that point. Once -- if the agency does act on and denies it, then the time limit is the 60-day time limit in CBD one.

THE COURT: Right. But the agency is not taking the position here that the plaintiffs are time-barred from an appropriate challenge, are they? Is the agency taking that position?

The agency's position here is that there is nothing new here. This should be treated as a considered, although there is nothing in the regulations, or statute, or legislative history addresses reconsideration, but your position here is that there is nothing new, so they should not be allowed an opportunity to get a second bite at the apple basically?

MR. HEMINGER: That is correct, Your Honor.

THE COURT: But as opposed to saying that they are time-barred as a matter of law from seeking an appropriate

review, or a review of the agency decision, or is that the position?

MR. HEMINGER: The agency considered what it had done previously but found that there really was no change of circumstances.

THE COURT: Right.

MR. HEMINGER: The agency was not relying on a statute of limitations per se.

THE COURT: Well, that's a point I wanted to make clear.

You didn't say, and by the way, and further, the statute of limitations has run on these plaintiffs.

MR. HEMINGER: I don't believe that's what the agency did, Your Honor.

THE COURT: Are we clear as to what the statute of limitations -- again, it is not a trick question. I just don't know the answer. Do we know what the statute of limitations is on these agency decisions?

MR. HEMINGER: No, Your Honor. I am not sure that I know the answer to that.

THE COURT: The government doesn't know?

MR. HEMINGER: The government, I am sure, does know somewhat.

THE COURT: All right. Let me thank you for a second. Let me pester them for a few minutes.

MR. HEMINGER: Okay. Thank you, Your Honor.

THE COURT: Maybe I can get an answer to that last question. Maybe someone else knows the answer to that question. I just need an answer to that last question.

MR. MARTELLA: Your Honor, the last question -- I didn't catch all of it.

THE COURT: What is the statute of limitations for challenging an agency decision in the first instance? It depends on the statute the particularly the firm.

MR. MARTELLA: I wanted to actually discuss that. It depends on the statute. But typically, if a case is going to go to the D.C. Circuit, for example, from the EPA Clean Air Act case --

THE COURT: This case here. I mean they came to Federal Court challenging the time-barred 88 days as opposed to 60. So 60 days is not -- well, what is the statute of limitations? When are they forever barred?

MR. MARTELLA: In this case, that I would have to check.

THE COURT: We have two checkers. Does anyone have the answer? Plaintiffs probably know.

MR. MARTELLA: Could I take five minutes, please, Your Honor, to address a question.

THE COURT: Sure, if you want to.

MR. MARTELLA: Thank you.

THE COURT: I would like you to focus your answers on the questions I have asked.

MR. MARTELLA: Yes.

THE COURT: Because those are the ones that are troubling me.

MR. MARTELLA: You had four themes of questions -- timing, the parties, the relief, and the reconsideration, and if I could just touch each of those briefly.

You asked the question about timing, are they time-barred from coming in here? And I get back to the notion that in environmental law there is always a statute of limitations.

It is frequently 60 days. But the D.C. Circuit even last summer made it clear. Even if you have a firm statute of limitations like 60 days, and there are grounds arising after -- something that happened after those 60 days, you can have your day in court and come back later.

THE COURT: New evidence?

MR. MARTELLA: New evidence. Maybe you are impacted in a way that you were not before, and the D.C. Circuit case last summer, Citizens for Responsible Regulation, that's what happened.

There was a regulation in 1980. It had been challenged in 2010, and the D.C. Circuit said, you have standing to challenge it today, because you were not

impacted until 2010. You have new grounds arising after.

So I understand the court's position. You don't want to see someone forever shut out of court, and if there are new grounds arising after, I think there is authority for EPA to consider that. I just don't think that that's the case here today.

This is unusual in that normally the government makes a decision, you have your statute of limitations and the clock stops. Here the plaintiffs can keep filing petitions, which kind of restarts the clock.

THE COURT: But they are new plaintiff though, and the new plaintiffs are saying, hey, don't penalize us. We didn't do anything. And if I understood counsel, he agreed with me that if these were entirely new plaintiffs that they would be entitled to an up or down.

MR. MARTELLA: Sure. And I understand that there are new parties, and I think there is a case on point there, too. It is a Supreme Court case called Taylor versus Sturgill, and what that case basically says is res judicata is not necessarily avoided by joinder.

I offer a cite, Your Honor. It is in our brief. 553 U.S. at 895, and the court says:

"A party bound by a judgment
may not avoid its preclusive
force by relitigating

through a proxy. Preclusion is thus in order when a person who did not participate in a litigation later brings suit as a designated representative of a person who was party to the prior adjudication."

The court goes on to talk about a standard, and I hate to use this because it is a little harsh, but the court's words are, tactical maneuvering. Are the parties engaged in tactical maneuvering?

EPA does not use those words, but if you look at the way they analyze this, they are basically saying that this is a second bite at the apple.

THE COURT: But there are two people, or two entities.

MR. MARTELLA: Covered by the same lead party, the same lead counsel. It is basically a cut-and-paste. I think it's fair to say that if you look at the Supreme Court decision, this could meet -- this does meet the tactical maneuvering standard set out by the court.

Now if they had come with new types of relief, new types of argument new types of information, I think the analysis could be different, and I think that the concern

here is otherwise the statute of limitation is rendered irrelevant because you could always find somebody who could always bring a new case and make the same arguments, but they are a new party.

That's why I think that the court's trying to balance here in the Taylor versus Sturgill case. It is not trying to deny anyone their day in court, but recognizing that you cannot have people keep coming back taking a bite at the apple and rendering the statute of limitations irrelevant.

You asked some questions about the relief. Does the fact that the relief was technically different matter? I think counsel for the government made the right point in terms of saying that in the original petition they asked for the universe. EPA considered everything up to -- and now they are being more explicit.

But I do think that it's important to point out on page 16 of their new petition -- of the 2012 petition they say:

"Petitioners believe the necessary and most effective regulation would be a complete ban."

So that continues to be their position. They are qualifying in some ways, but on page 16 I think it is black

and white. The necessary and most effective regulation would be a complete ban.

And finally, Your Honor, you asked a question about does EPA have discretion to treat this as a petition for reconsideration as opposed -- I am sorry, a request for reconsideration.

I think to me, the way I look at this is, plaintiffs' labeled a petition. They say on it, this is our petition. The government looks at it and says, this does not meet the standard for petition under TSCA, and I think at the end of the day it doesn't matter what the plaintiffs' labeled it, it is how the government is looking at it.

They clearly get discretion on that, and are they being arbitrary and capricious in looking at it that way? I think that is the lens we have to look at this, and I think under that standard the government has made its case and its response for it is not being arbitrary and capricious in saying it is not a petition at all. It is a submission. It is a reconsideration, but clearly, I think the recent City of Arlington case gives them the deference to analyze that.

Thank you, Your Honor.

THE COURT: Ms. Seidman did you want to say anything?

MS. SEIDMAN: No, Your Honor. Thank you.

THE COURT: Let me bother plaintiffs' lawyers for a few minutes.

You were writing down the questions. I am not going over them.

What is your reaction?

MR. KEATS: Thank you, Your Honor. Do you want me to take them in order? I will attempt to take them in order.

Your first question concerned, how do plaintiffs get this back before the agency? I think that that goes to the heart of the problem with the government's position.

It is important to recognize that our answer was -- after the last situation was -- file a new petition. The first petition was filed. It was filed under specific conditions and requested specific relief.

This court ruled that the petition was -- that the lawsuit against that petition was filed too late, and then the -- at one party at that point said, okay, well, what else could happen? What other options are available?

At that time --

THE COURT: That's not a merits determination at all, is it?

MR. KEATS: Correct, yes. It is just a -- it is based purely -- There is -- no one ever looked at the merits

of that petition. The EPA acknowledged that it never reached the merits of the decision, and the court never looked at the merits of petition.

Very importantly, the de novo review that the petitioners are afforded under TSCA was never -- never occurred, either. No one was ever subjected to that.

So the answer was to file a new petition, and that seems to be the most logical and reasonable answer to that question.

Now what has happened in this situation is that --

THE COURT: File a new petition with the same parties? It sounds like you had gotten an up or down call had there been entirely new parties.

MR. KEATS: Correct, which I think is a very interrogator answer. I actually -- I don't know if I agree that that would be the EPA's answer if that is what happened, and the reason is because --

THE COURT: Could it be flipped? If two of your plaintiffs withdraw, can they flip on that?

MR. KEATS: Oh, I would love to hear. If they were bound to it right now, I think we would have very, very happily have had two of our plaintiffs' withdrawal right now and we could go on with the case, absolutely.

THE COURT: Well, it sounds like that is an option available. That is what counsel -- I asked them two or

three times to be clear about that, but it sounds to me -- I mean we talked about it.

You know, new parties could not be seeking reconsideration. So if there are only a finite number of options they are entitled up or down.

MR. KEATS: If that is the single issue, Your Honor, and I totally agree, if that is the single issue, that is a very easy decision for plaintiffs to make. I'm sure the single party that is a party to this case right now would have no trouble dropping out of the case to allow the other petitioners to go forward.

The reason why I don't think that that is actually the EPA's answer is because --

THE COURT: But the government's attorney just told me that was the answer.

MR. KEATS: I am unfamiliar with how that works with confessions or the work of the government, but if that is their position, I'm happy to stand on it, Your Honor.

THE COURT: That's what I heard. So if that one plaintiff withdraws, then where are we?

MR. HEMINGER: Your Honor, I made it clear from the beginning that I cannot bind the agency, and in fact you are asking a hypothetical. There are other reasons why having new petitioners submitting the exact same document would warrant EPA to treat it as not a separate petition

that is cognizable under Section 21.

THE COURT: All right. I think you are on the record as saying, you know, if they were all new, the same allegations, they would be entitled to up or down, because it would not be reconsideration. I thought that is what you said.

MR. HEMINGER: It would be a factor that EPA would consider, but I cannot say that that would be the only factor.

THE COURT: All right.

MR. KEATS: And I think the reason -- the critical distinction that was not discussed by the government's attorney was the other factor that they were looking at in terms of the differences between the first and second petition, which had nothing to do with what was contained to the petition and had everything to do with their analysis of the petitions.

So a major factor in why they chose to determine that the second petitioner was not new was because they would have the same response to it the second time, and that is simply not a factor that they should be allowed to include in determining the differences between two petitions.

THE COURT: Well, the government argues that they were entire sections of 2012 submission that were copied,

lifted, whatever -- and we all copy and paste, and I am not saying it in a negative way, because look, standards of review are the same. They are the same in lots of cases. So we all do a fair amount of some copying.

But I think it is hard to arguing that they were not lifted or copied from the 2010 petition. Why shouldn't that -- I mean entire sections, why shouldn't that persuade the court that the positions were essentially identical?

I mean there is some new material, but essentially, if the court is persuaded that they are identical submissions, then why shouldn't that lead the court to the conclusion that this is just an attempt to circumvent the statutory limitations period?

MR. KEATS: If the court is persuaded that the two petitions are identical, then I cannot disagree.

THE COURT: They are substantially identical. I mean identical would be verbatim.

MR. KEATS: Right.

THE COURT: I don't think anyone agrees they are verbatim.

MR. KEATS: Right.

THE COURT: But nationwide ban versus regulating it -- regulating -- if the court were to issue an order -- if the agency were to issue an order regulating, that we would be, in effect, for the nation, right? It wouldn't be

for any area, right? So it is the same type of relief you are seeking.

MR. KEATS: Well, I think that the plaintiffs presented several different articles in the press that indicated that there was a huge concern regarding the military and regarding law enforcement officers, which is a huge number of people that are using lead ammunition who would be affected by the previous request. That was a -- I mean that was the majority of the concern -- concerned people using those types of uses.

The second petition said specifically that the issue wasn't so much the existence of lead bullets and lead shot, period, it was the relationship of lead bullets and lead shot and its harm to the environment and to people.

If there are instances, for instance, shooting ranges or law enforcement, or military uses that there is no demonstrable harm to the environment, there is no reason for there to be any regulation.

I think that at the time of the first petition, given the amount of attention given to the breadth and the scope of that request, it is totally reasonable for the petitioners to believe that that was a huge reason why the agency reacted so negatively to the petition, and that a request that was more tailored and more targeted toward the actual harm would be received much differently.

That is -- it is not -- it is impossible to understate the differences in those requests. I think that the requests are different.

THE COURT: No. No. I mean I put all the cards on the table, but also what is troubling is the fact that -- well, let me pose it in the form of a question.

Why shouldn't the court -- should the court not be persuaded by the fact that only 20 sources that were cited in the 2012 submissions were not include in the 2010 petition, and only six of those post-dated the 2010 petitioner -- again, getting back to what the government is saying -- it is the same soup warmed over here.

MR. KEATS: The government poses this relationship of let's say 20 versus 320, as if it is some sort of ratio -- that the ratio would determine the sameness or difference-ness. Had the plaintiffs in the second petition only included those 20 new sources, then 100 percent of the sources cited in that petitioner would be new.

Again, it just demonstrates the arbitrariness of the distinction. The distinction should --

THE COURT: So we have some new sources and we have some new parties, and all you want is a new day in court, right?

MR. KEATS: Correct. All we want is what TSCA requires, which is a fundamentally extraordinary relief

available to petitioners in this situation.

THE COURT: It is hard -- I mean it is hard -- since we administer justice, it is hard denying anyone access to the courts. I mean sometimes there are cogent reasons for that. I mean it wasn't with any great deal of happiness, you know, to sign off on an opinion that says you are out of time. You know, that hurts, because that's -- because we want people come to court and air their grievances.

The government has said, though, that if you lose you win, because you have the right to file an APA challenge, is that right?

MR. KEATS: Well, in fact we did file an APA challenge. This law suite includes an APA challenge on exactly -- exactly on those grounds. So we think that the TSCA challenges the more meritorious claim, because TSCA is very clear on its face that the government needs to either grant or deny the petition, and it did.

If it denied, then there is TSCA de novo review pursuant to Section 21. If it failed to do either, there is TSCA Section 21 de novo review. But in the alternative, if what the agency says that it did if the court is persuaded that the agency is allowed to regard these as identical, we do have a claim in this action for an APA claim.

THE COURT: If it survives?

MR. KEATS: Yeah. Well, I think it would survive -- exactly, and that is what we have been arguing -- we, in our papers, described why the -- we go directly to that challenge when we discuss the merits of the petitioners being the same or not.

So it kind of jumbles together here with these two different claims, because they are both on slightly different standards, but they are both there.

I think that that difference -- that goes to the core of what the government is seeking here. They are seeking to eliminate -- they are seeking to subvert TSCA's very generous de novo review for petitioners, and that's the -- that's actually the -- should be regarded by this court as the greater harm in this situation than the possibility of a petitioner subverting the 60 day statute of limitations.

TSCA is -- and the Congressional record is replete with this, and the court -- the decisions from this court and from this district and from this circuit repeat these statements that TSCA's primary concern is access of petitioners to the petitioning process. And that is exactly what the government is doing here, is they are actively trying to subvert that access.

If I could -- one other thing that Your Honor brought up earlier was regarding the 98 different

petitioners, and I think that your question was whether if the -- to back up a little bit, that hypothetical was actually presented by one of the interveners, and the plaintiffs were responding to that hypothetical in the brief.

But all the same, the idea is that if 98 different petitioners filed identical petitions all simultaneously, what would the government, in its right, be able to do?

What the EPA has been saying is that it could choose one of those petitions and grant or deny it, and then declare the other 97 petitions to be nearly identical, and the remedy for those other 97 petitioners would be to intervene in any subsequent lawsuit.

The problem with that is that, again, that directly confronts the de novo review standard that all of those 97 petitioners would have available to them -- what if the first petitioner didn't file a lawsuit? There is no cause of action at all for those 97 other petitioners.

They have to be able to file an identical petition. In that scenario, they have to be able to file their petition and have the agency review it, because they, individually, hold the right to a de novo review.

THE COURT: The standard of review is critical, correct?.

MR. KEATS: Correct.

I don't have any other -- I think that we just covered all of your questions, Your Honor, unless you have any other ones?

THE COURT: Let me just say one thing.

The plaintiffs filed notice of supplemental authority that arguably was not favorable in part to the plaintiffs, right?

MR. KEATS: Correct.

THE COURT: And I just want to say cheers to you, and I mean that. I mean that, because you know what, that is a sore spot with judges. We see it all too often. I go out and talk to -- I teach at a law school, and I talk at law schools, and wherever else people want to listen to me, and that is a sore spot.

Lawyers are under an obligation -- and we will talk a little bit now, too. Lawyers have an obligation to provide the court with authority that does not support their position, but do you know what, we don't see that a lot, and it's unfortunate.

When my brilliant lawyers file authority, the question is, why didn't so and so cite this? And it's a tortured distinction between -- and more often than not the distinctions don't fly.

Or an attorney will say, well, we recognize that that authority existed, but the other side didn't mention

it, so we didn't say anything about it. You know, it is just cat and mouse stuff.

But I just want to applaud your efforts. I mean regardless of how I rule on this issue, there is a lot to be said about lawyers abiding by their obligations to let us know something that doesn't hurt you. Then if you think it can be distinguished, that is fine, but you get a lot of kudos -- lawyer do, because we just do not see it happening on a regular basis.

So anyway, thank you for doing that. I appreciate it.

MR. KEATS: Thank you, Your Honor.

THE COURT: Let me do this. Anyone else want to say anything? Ms. Seidman?

MS. SEIDMAN: No thank you, Your Honor.

THE COURT: Anyone else?

MR. HEMINGER: I just wanted to answer a question that you posed. The general statute of limitations for the APA would be the six-year statute of limitations.

THE COURT: Six years?

MR. HEMINGER: Yes, Your Honor.

THE COURT: I didn't want to guess at that.

MR. HEMINGER: Yes, Your Honor. But that provides that if there is a more specific statute of limitations that would apply, and so that here would be the 60-day time limit

in Section 21.

THE COURT: So it would be six years unless the 60 days applied?

MR. HEMINGER: I believe.

THE COURT: So where does that leave them then?

MR. HEMINGER: I think it would be the 60 days, which is what the Center did here, Your Honor.

THE COURT: Do you agree with that?

MR. KEATS: Only, Your Honor, if you are considering this under TSCA. Under the APA I think we do the six years, but it is actually irrelevant, because we filed within 60 days regardless.

THE COURT: Anything further?

Let me do this. I am going to take about a 15 minute recess. Does anyone else want to respond to any of those questions, or just say anything else that is important that we may have overlooked? If there is something that you believe is really important that we haven't touched on by the question-and-answer, I invite you to tell me.

Anything else?

MR. KEATS: Your Honor, the only thing I would point out is that the statute of limitations, obviously, occurs a lot in the law, and it has an unfortunate effect, but when a party sleeps on its right, that's the effect of the statute of limitations.

Thank you, Your Honor.

THE COURT: I can't get you up to the podium. All right, nothing further? Okay, let me take a 15 minute recess.

**(Recess.)**

THE COURT: All right, counsel, I am going issue my ruling today.

On March 13, 2012, the plaintiffs, Trumpeter Swan Society, the Cascades Raptor Center, the Center for Biological Diversity, the Loon Lake Loon Association, the Preserve Our Wildlife Organization, the Tennessee Ornithological Society, and Western Nebraska Resources Council, collectively referred to as the plaintiffs in this ruling, along with 94 other organizations, submitted a petition, and I will refer to it as the 2012 submission, to the United States Environmental Protection Agency, and it will be referred to either as EPA or agency, seeking the regulation of lead bullets and shot pursuant to the Toxic Substances Control Act, 15 U.S.C. Section 2601, et seq., and I will refer to that as either TSCA or the act.

The EPA denied the petition in a letter dated April 19 of last year on the grounds that it did not, quote:

"Consider the 2012 submission
to be a new petition cognizable
Under section 21."

End quote.

Instead, the EPA explained that it regarded the 2012 submission as a request for reconsideration of a petition submitted by the Center for Biological Diversity and two other organizations on August 3, 2010, which was denied on August 27, of that year.

Plaintiffs filed this action on June 7, 2012, and filed an amended complaint on July 10 -- strike that -- on June 7, 2012, and filed an amended complaint on July 10, 2012 against Lisa P. Jackson, the administrator of the EPA, acting in her official capacity, as well as the agency itself, and I will collectively refer to the agency as the federal defendants, challenging the EPA's denial of the rulemaking petition and the agency's decision to treat the March, 2012, petition as a petition for reconsideration rather than as a new petition for rulemaking.

The National Shooting Sports Foundation, Inc., NSSF, the Association of Battery Recyclers, Inc., the ABR, and the National Rifle Association and Safari Club International, collectively NRA/SCI, were permitted to intervene as defendants.

Pending before the court are the federal and intervenor defendants' motions to dismiss the case. Defendants argue that plaintiffs' amended complaint should be dismissed one, for lack of subject matter jurisdiction

under Rule 12(b)(1) of the Federal Rules of Civil Procedure; and two, for failure to state a claim under Rule 12(b)(6).

Upon consideration of the motions, the responses and replies, the applicable law, and for the reasons that will follow, the court will grant the motions to dismiss for lack of jurisdiction under 12(b)(1).

The court therefore does not need to reach the analysis under 12(b)(6) as to whether plaintiffs have failed to state a claim that the EPA has the authority to regulate lead shot and bullets.

Now insofar as the background is concerned, the court will say the following:

On August 3, 2010, plaintiffs Center for Biological Diversity, along with Project Guptile, and Public Employees for Environmental Responsibility submitted a rulemaking petition to the EPA entitled, and I quote:

"Petition to the Environmental Protection Agency to ban lead shot bullets and fishing sinkers under the Toxic Substances Control Act."

End quote, and in that regard see Center for Biological Diversity versus Jackson, 815 Fed. Supp. 2nd, 85, my decision of 2011.

Citing the effect of lead on wildlife and the environment, plaintiffs' requested that the EPA prohibit the manufacture, processing and distribution of lead shot bullets and fishing sinkers.

The agency denied the portion of the petition seeking regulation of lead shot and bullets by letter dated August 27, 2010, and subsequently published the reasons for the denial in the Federal Register on September 24, 2010.

The EPA explained that it was denying that portion of the petition because, quote:

"TSCA does not provide the agency with authority to address lead shot and bullets due to the exclusion found in TSCA Section 3(2)(B)(v)"

Which excludes from regulation by reference to Section 4181 of the Internal Revenue Code, quote:

"Pistols, revolvers, firearms (other than pistols and revolvers), shells and cartridges."

End quote.

On November 4, 2010, the EPA sent plaintiffs a second letter denying the portion of their petition seeking regulation of fishing sinkers and published the reasons for

denial of that portion in the Federal Register on November 17, 2010.

Plaintiffs filed suit on November 23, 2010, seeking de novo review of the final agency decision pursuant to 15 U.S. Code, Section 2620(b)(4)(B).

EPA and defendant intervenor, NSSF, filed partial motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the court lacked jurisdiction because the plaintiffs had failed to adhere to TSCA's 60-day statute of limitations.

According to defendant, the EPA's August 27, 2010 letter denying the portion of the petition regarding lead shot and bullets was a formal denial, one that severed the August, 2010, petition and triggered a separate statutory period of limitations. Because the letter was sent 88 days before plaintiffs filed suit, defendants argued that plaintiffs' suit was untimely.

After determining that the TSCA does not define the term, quote, petition, end quote, the court found that the agency's interpretation of Section 21 was persuasive under the Skidmore standard.

The court held that TSCA's statute of limitations was jurisdictional and upheld the agency's decision to sever plaintiffs' rulemaking petitioner, and issued two separate denials, thus triggering two separate 60-day periods within

which plaintiffs were required to bring an action in the District Court. On that basis, the court granted defendants' motion to dismiss on September 29, 2011.

On March 13, 2012, CBD and Project Guptile, along with 99 other entities, submitted a petition asking that the, quote:

"EPA initiate rulemaking
for regulations that
adequately protect wildlife,
human health and the
environment against the
unreasonable risk of injury
from bullets and shot
containing lead used in
hunting and sports."

End quote -- on the basis that the lead in bullets and shots, quote:

"Have the potential to cause
harmful lead exposure to
wildlife and humans."

End quote.

Specifically, plaintiffs requested that the EPA, one, evaluate the risk of injury to the environment, human health and wildlife from lead bullets and shotgun pellets used in hunting and shooting sports, which have the

potential to cause harmful lead exposure.

And two, initiate a proceeding for the issuance of rulemaking under Section 6(a) of TSCA to adequately protect against such risks.

The 2012 submission specifically noted that it differed, quote:

"Significantly from a 2010 petition seeking a complete ban on all lead ammunition. The current petition seeks different relief under TSCA. It is brought by a different and much large group of petitioners, and introduces significant new information regarding the toxic effects of lead ammunition on wildlife and human health."

End quote.

Moreover, the petitioners noted that the petition included, quote:

"Significant new information repudiating the EPA's conclusion that TSCA does not provide the agency with authority to

address lead shot and bullets."

End quote.

The EPA denied the 2012 submission by letter dated April 9, 2012 because the agency found that the, quote:

"2012 submission was substantially the same as the petition to regulate lead bullets and shots submitted 2010."

End quote.

It did, quote:

"-- not consider the 2012 submission to be a new petitioner cognizable under Section 21."

End quote.

In making this determination, the EPA discussed the differences between the 2010 and the 2012 petitions, but found them to be insubstantial. The agency noted that, quote:

"Even if the 2012 submission were considered to be new or different petition cognizable under Section 21 of TSCA, EPA would deny it for the same reasons it denied the 2010

petition."

End quote.

Namely, that the agency did not have the authority to regulate lead bullets and shot because of the exception in the statute. Because the EPA did not consider the 2012 submission to be a cognizable petition, it published its reason for denial on its website, not the Federal Register.

Now with respect to the legal standards under Rule 12(b)(1), as we know, Federal District Courts are courts of limited jurisdiction, and it is citing -- we are relying on Kokkonen, K-O-K-K-O-N-E-N, versus Guardian Life Insurance Company of America, 511 U.S. 375, 377, and a motion to dismiss pursuant to 12(b)(1) presents the threshold challenge to the jurisdiction of the court, relying on Hasse versus Sessions, 835 Fed. 2nd, 902, 906.

When a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. See Lujan versus Defenders of Wildlife, 504,U.S. 555, 561.

In evaluating the motion, the court must accept all of the factual allegations in the complaint as true and give the plaintiff the benefit of all inferences that can be drawn from the facts alleged. In that regard, see Thomas

versus Principi, 394 Fed. 3rd, 970, 972, from our D. C. Circuit.

However, because subject matter jurisdiction is an inquiry concerning the court's very power to hear the claim, the court must get the plaintiffs' factual allegations closer scrutiny when resolving a 12(b)(1) motion than would be required for a 12(b)(6) motion, and in that regard relying on -- the court relies on Macharia versus United States, 334 Fed. 3rd, 61, 64, another D.C. Circuit opinion.

In determining whether it has jurisdiction over a particular, the court may consider materials outside the pleadings where necessary to resolve disputed jurisdictional facts, relying on Herbert versus National Academy of Sciences, 974 Fed. 2nd, 192, 197.

And these are all D. C. Circuit opinions for the most part.

When faced with motions to dismiss pursuant to both Rule 12(b)(1) and 12(b)(6), the court should first consider the 12(b)(1) motion, because, quote:

"Once a court determines that it lacks subject matter jurisdiction, it can proceed no further."

End quote, again relying on decisions from this court,

Sledge versus United States, 720 Fed. Supp. 2nd, 87, 91, and quoting the Simpkins decision, 108 Fed. 3rd, 366.

When considering a challenge to an agency's construction of a statute that it is employed with administering, the court must apply the two-step standard articulated in Chevron U.S.A., Inc. versus NRDC, 467 U.S. 837.

First, the court must assess, quote:

"Whether Congress has directly spoken to the precise question at issue."

End quote. And that is the Chevron decision, 842.

To do so, courts use traditional -- strike that.

To do so courts, quote:

"Use traditional tools of statutory construction to determine whether Congress has unambiguously expressed its intent."

End quote, relying on Serono Labs versus Shalala, 158 Fed. 3rd, 1313, 1319, another circuit opinion quoting the Chevron case.

This involves an examination of the text, structure, purpose and legislative history of the statute. In that regard see the Shays decision. Shays, S-H-A-Y-S,

versus FEC, 414 Fed. 3rd, 76, another D.C. Circuit opinion, and the Bell Atlantic Telephone Company versus FCC, another circuit opinion from this circuit, 131 Fed. 3rd, 1044, 1047.

Quote:

"If the intent of Congress is clear, that is end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."

Again, relying on the Chevron decision.

If, however, quote:

"The statute is silent or ambiguous with respect to the specific issue --"

End quote, then the court must, quote:

"Determine the deference, if any, it owes the agency's interpretation of the statute."

End quote. Again, a D.C. Circuit opinion, Mount Royal Joint Venture versus Kempthorne, 477 Fed. 3rd, 745, 754, relying on Supreme Court precedents in the Mead case, 533 U.S. 218.

In the second step of the Chevron analysis, the

court will look to the interpretation of the statute proffered by the agency and decide whether the interpretation is, quote:

"Based on a permissible construction of the statute."

End quote. Chevron at 843.

At this stage the court must, quote:

"Accord considerable weight."

End quote, to the agency's construction of the statute. Indeed, the court is, quote:

"Bound to uphold an agency interpretation as long as it is reasonable, regardless whether there may be other reasonable or even more reasonable views."

Again, relying on the Serono decision.

As a general matter, quote:

"If the agency enunciates its interpretation through notice and comment rulemaking or formal adjudication, courts give and should give the agency's interpretation Chevron deference."

Again, relying on Mount Royal Joint Venture, 477 Fed. 3rd, 754.

However, if the agency's interpretation is in something less than the formal notice and common procedure, the court is obligated to accept its interpretation -- strike that. Obligated to accept its, quote:

"Interpretation only if it
is persuasive."

End quote. The Mount Royal Joint Venture case relying on -- or citing Mead.

Interpretations in such formats are, quote: Entitled to respect, end quote, to the extent that they have the, quote, power to persuade, again relying on Christensen versus Harris City, 529 U.S. 576, 587, citing the Skidmore case, 323 U.S. 134.

Whether the interpretation has such, quote:

"Power to persuade--"

End quote, is determined by the thoroughness of the agency's consideration of the issue, the validity of its reasoning, and its consistency with earlier pronouncements. Again, relying on Skidmore at 140.

An agency's interpretation, quote:

"May merit some deference
whenever --"

Strike that.

An agency's interpretation, quote:

"May merit some deference, whatever its form, given the specialized experience and broader investigations and information available to the agency, and given the value of uniformity and its administrative and judicial understandings of what a national law requires."

And that's from the Mead decision at 234.

Now here the defendants argued that plaintiffs are attempting to circumvent the 60-day time limit set forth in section 21 of TSCA, which this court has already determined is jurisdictional.

Therefore, defendants contend that the court lacks subject matter jurisdiction to entertain plaintiffs' claims regarding their March 12 -- their March, 2012, submission.

Defendants further argue that the EPA acted well within its discretion to construe plaintiffs' March, 2012, submission as a petition for reconsideration rather than as a new petition for rulemaking.

According to the defendants, this Court's decision

in CBD versus Jackson is consistent with their interpretation of the statute as the court there observed that, quote:

"TSCA nowhere defines the term petition."

And that's in this court's opinion at 815 Fed. Supp., 2nd at 92.

The court must begin its inquire with the plain language of Section 21 of TSCA. As the Supreme Court has noted, if the plain language of the statute addresses, quote:

"The precise question at issue"

end quote, then, quote:

"That is in the matter, for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress."

End quote. Chevron at 842, 43.

In order for a citizen to submit a petition pursuant to the TSCA, the petition must be, quote:

"Filed in the principal office of the administrator and shall set forth the facts which it is claimed established that

it is necessary to issue,
amend or repeal a rule under
the applicable provisions of
TSCA."

And that is the Federal statute, 15 U.S. Code, Section 2620(b)(1).

Within 90 days of the date of filing, quote:

"The administrator shall either
grant or deny the petition."

End quote.

If the petition is denied, and that is section 2620(b)(3).

If the petition is denied, the administrator must publish the reasons for denial in the Federal Register. Thereafter upon denial, quote:

"A petitioner may commence a
civil action in a District
Court of the United States
to compel the administrator to
to initiate the rulemaking
proceeding as requested in the
petition within 60 days after
the denial."

Again, 2620(b)(4)(A).

The courts review is <u>de novo</u> only if the petition

is for the issuance of a rule under the relevant portions of TSCA, again citing the statute 2620(b)(4)(B). Petitions to amend or repeal a rule by contrast are subject to less, quote:

"Less hospital treatment"

end quote, under the APA in a Federal Court of Appeals, again relying on D. C. Circuit precedent in the case of Environmental Defense Fund versus Reilly, 909 Fed. 2nd, 1497, 1503.

As the court indicated previously in CBD versus Jackson, TSCA does not define, quote, petition, end quote, nor does it define, quote, motion for reconsideration, end quote. The legislative history similarly provides little guidance on how the agency is to treat similar petitions for rulemaking made by some of the same parties.

The EPA has apparently determined that plaintiffs' March, 2012, submission asks the agency to reconsider its decision, not to initiate rulemaking 2010. Plaintiffs argue to the contrary that they were making a separate request for new rulemaking on the basis of new information as well as legislative history.

Moreover, they argue that the plain language of Section 21 is clear: if the correct prerequisites of 15 U.S. Code Section 2620(b)(1) are met, the agency only has two options to, quote:

"Either grant or deny the petition."

End quote. Again, relying on the federal statute, 2620(b)(3).

Plaintiffs contend that if the agency determines that, quote:

"A petition is identical to a previously submitted and rejected petition, it should deny the petition and publish that reason for its denial in the Federal Registry."

End quote.

Congress has not spoken on the issue of when the EPA may determine that a petition pursuant to Section 21 of TSCA is a petition for reconsideration rather than a new petition. However, in discussing the purpose of the citizen petition provision, the House Committee noted that de novo review is only available with respect to agency denials of petitions for new rulemaking and not, quote:

"With respect to civil actions respecting petitions for amendment or repeal of rules."

According to the Senate Committee, such differential treatment is warranted because, quote:

"In a judicial review of the agency's denial of a citizen's petition or failure to act, there would be no record upon which the agency could be based, and therefore a de novo procedure is essential to provide the opportunity to develop such a record."

End quote.

That concern is absent when the court considers a petition to amend or repeal an existing rule. Presumably, with respect to a petition for reconsideration, the reviewing court could similarly review the record from the agency's denial or failure to act on the original petition.

Because neither the statute nor the legislative history specifically discuss a petition for reconsideration or the agency's options if certain parties file multiple citizen petitions that seek similar relief, the court finds that the text of the statute and the legislative history is ambiguous.

Because the plain meaning of TSCA is ambiguous, the court must next determine what, if any, deference it should give to the EPA's interpretation of the statute. In that regard for guidance see the Mount Royal Joint Venture

case, 477 Fed. 3rd, at 754.

Plaintiffs and the EPA differ as to whether the court should apply Chevron or Skidmore deference to the agency's decision to treat plaintiffs' 2012 submission as a petition for reconsideration.

The EPA argues that the court should apply Chevron even though its decision was contained in a letter. Plaintiffs argue to the contrary, because the EPA's decision was not articulated through formal notice and comment rulemaking, it should be afforded Skidmore deference and be assessed on the basis of whether it has the, quote:

"Power to persuade."

End quote.

While the Supreme Court has held that an agency interpretation embodied in something less formal than notice and comment rulemaking can warrant Chevron deference in certain circumstances, in that regard see Barnhart versus Walton, 535 U.S. 212, the court need not reach the question, because the EPA's interpretation is persuasive under either standard.

Here, the EPA chose to treat plaintiffs' 2012 submission as a petition for reconsideration rather than as a cognizable petition because of numerous similarities to the 2010 petition.

Defendants argue that this decision was well

reasoned and based on a number of factors:

One, the essentially identical exposure and toxicity information presented in the two petitions.

Two, the 2012 submission presented little new information. Of the over 400 citations, only 20 were not included in the 2010 petition, and only six postdated it.

Three, the legal conclusions in the two positions were the same.

Four, the 2012 submission cited to the legislative history of the TSCA, which the EPA considered in denying the 2010 petition.

Five, the relief requested in the 2012 submission was an open ended request for a Section 6(a) rule regarding -- strike that -- for a Section 6(a) rule regulating lead shot and bullets, not the complete prohibition requested in the 2010 petition, but plaintiffs continued to advocate for a nationwide ban.

Defendants contend that these conclusions, quote:

"Could only be arrived at
by close review and comparison
of the two petitions -- strike
that."

Defendants contend that these conclusions, quote:

"Could only be arrived at
by a close review and

comparison."

End quote, of the two petitions, and thus are evidence that, quote:

"The agency clearly did not reject the 2012 submission out of hand."

End quote.

Moreover, according to the defendants, plaintiffs' 2012 submission was an attempt to circumvent the jurisdictional requirements of Section 21, the court cannot let stand. If the court were to accept plaintiffs' reading of the statute, the EPA claims that, quote:

"The exact same parties could file a submission exactly the same as the previous petition, and EPA would be forced to treat it as a new petition, once again subject to judicial review under Section 21, even if the agency's denial of the previous petition has not been timely challenged."

End quote.

The agency further argues that its decision is consistent with the statutory scheme, which does not provide for de novo review of petitions to amend or repeal an existing rule. Indeed, when discussing the statute, the House Conference specifically indicated it that did not, quote:

"Intend for the administrator
to be subjected to constant
petitions challenging rules
or orders for which adequate
judicial review is provided
under Section 19."

End quote, which allows for challenges to rulemaking initiated by the agency, and are thus reviewed under the less rigorous standard of the APA.

Defendants claim that all of this supports the agency's interpretation of Section 21, and that this interpretation is reasonable under either Chevron or Skidmore.

Defendants acknowledge that there is very little precedent to support their position. However they cite an unpublished 1990 decision, Walker versus EPA, No. H-87-3552. It is a slip opinion from the Southern District of Texas issued October 15, 1990. The government relies -- or the cite says, instructive.

Now in Walker the plaintiff submitted a petition to amend an existing rule to the EPA on March 27, 1987, which was denied on June 24 of that year. Plaintiff did not file suit ion a District Court within 60 days as required by Section 21, and instead filed a second petition requesting an identical rule change on July 31, 1987.

The EPA sent plaintiff a letter on September 11, 1987, and explained that because of the identical nature of the rulemaking request, it considered the July submission to be a refiling of the March petition.

Plaintiff filed suit arguing that the July submission was, quote:

"A separate and distinct
petition that must be
accepted or denied pursuant
to Section 2620."

End quote.

In ruling for the agency, the court noted, as this court also has, that the TSCA does not define petition, and articulate or four factors that a court should consider in determining, quote:

"Whether a subsequent
submission is sufficiently
different from another to
qualify as a separate

petition."

End quote.

One, the relief requested.

Two, the identity of the parties.

Three, the temporal relationship between the submissions.

And four, the new information presented, if any.

Based on these factors, the court upheld the EPA's decision not to treat the July submission as a cognizable petition.

Though the petition at issue in Walker was one to amend an existing rule and therefore subject to the arbitrary and capricious standard of review under APA, the four-part test articulated in that case presents a useful framework for determining whether the EPA's decision in the instant matter is persuasive under Skidmore.

Therefore, applying Walker, the court finds that the EPA's decision to treat the 2012 submission as a petition for reconsideration was persuasive under Skidmore.

The agency determined that the relief requested in the two petitions was nearly identical and contained little new information. Moreover, the 2012 submission was filed approximately 6 months after this court granted partial motions to dismiss in CBD versus Jackson.

Though plaintiffs argue that the EPA's decision to

treat the 2012 submission as a petition for reconsideration is inconsistent with the EPA's decision to treat as cognizable a third petition to amend filed in the Walker matter four months after the unpublished Walker decision was issued, the circumstances of the Walker case were entirely different.

While the plaintiff in Walker filed a third petition four months after the court's unpublished decision, that was over three years after the challenged second petition was submitted and ultimately denied.

The only factor that weighs in favor of plaintiffs' position is the second Walker factor regarding the identity of the parties. Plaintiffs' 2012 submission was submitted by 101 parties. The 2010 petition was submitted by five, and only two signed on to both petitions, CBD and Project Guptile. However, defendants argue that plaintiffs' insistence on the new parties to the 2012 submission is a ruse.

The salient issue is not how many parties have been added but rather which parties remain the same. Defendants point to the fact that CBD was the lead party on the 2010 petition and subsequent litigation, and it is lead party in this litigation as well.

This, according to defendants, is fatal to plaintiffs' claims that the 2012 submission was a cognizable

petition in its own right, rather than a barely disguised attempt to circumvent the jurisdictional requirements of that prevented judicial review of the 2010 petition.

The court agrees. A contrary holding recognizing plaintiffs' argument, would, quote:

> "Render the statute of limitations in Section 21 meaningless."

End quote, and would permit, quote:

> "A plaintiff to circumvent the limitations period by submitting a repetitive request for identical action on the identical issue long after the time period has expired."

That is what the Walker court recognized in its slip opinion at page 3.

Now whether an agency's interpretation of a statute is persuasive depends on the thoroughness evident in its consideration of the issue, the validity of its reasoning, and its own internal consistency with earlier pronouncements, relying on the Skidmore case at 140.

Applying this standard, the court concludes that the EPA did thoroughly consider how to address plaintiffs'

2012 submission and that the agency's reasoning was sound. In making its determination, the EPA assessed the differences and similarities between the two petitions and concluded that, quote:

"To the extent that there are differences between the two, they are not substantive."

End quote.

It also based its decision on a determination that the substantive factors underlying the denial of the 2010 petition would result in the denial of the 2012 submission even if it were considered as a petition cognizable under Section 21 of TSCA.

As the decision in Walker makes clear, the EPA has treated successive petitions in this manner before. That it has also reached a contrary conclusion in other situations as plaintiffs argued does not dictate the results here. The court agrees with the agency that, quote:

"Just as the EPA has the discretion to consider a submission not to be a new section 21 petition where it duplicates a previously filed petition, so too may the agency

decide that a second or
third submission should
be addressed on its merits
as an independent petition."

End quote.

The only case that plaintiffs cite in support of their argument, Citizens for a Better Environment versus Reilly, is inapplicable -- is not applicable to this case because the success of petitions at issue there requested rulemaking under different sections of TSCA, and requested different, not just more specific relief, and that is addressed at pages 1 to 3 of that decision. It is a Northern District of Illinois District Court decision issued May 29, 1991.

Indeed, all of the examples cited by plaintiffs are inapposite, because for each example the EPA first determined that it had jurisdiction to consider the issue. Here, in this case, the EPA has determined that it does not have jurisdiction to regulate lead in bullets and shot because of TSCA's exemption of shells and cartridges from the definition of a, quote: chemical substance, end quote, and as the Supreme Court held this week in the City of Arlington Texas, et al, versus the Federal Communications Commission, an agency's determination of the limits of its jurisdiction is entitled to Chevron deference.

Plaintiffs argue that the EPA can only grant or deny any submission and that it does not have the discretion to classify a submission as a motion for reconsideration. They also submit that in assessing whether the 2012 submission presented any, quote:

"Newly discovered, noncomulative material"

End quote, the quote:

"EPA applied a standard in excess of that established by TSCA."

End quote.

Further, plaintiffs argue that citations to the legislative history in its 2012 submission constituted new information. However, the legislative history of TSCA is over 30 years old and cannot hardly be considered new.

Moreover, plaintiffs do not explain what the standard of the TSCA is how the EPA exceeded it, and note only that requiring new information is the standard for a petition to repeal or amend it.

However, given that a motion for reconsideration is more likely a petition to amend or repeal than a new petition for rulemaking, the court finds that the EPA's decision to employ the standard for a motion to amend or repeal is persuasive and not inconsistent with the standards

set forth in the Walker decision.

And finally, the court also notes that an agency, quote:

"Has broad discretion to
determine when and how to
hear and decide matters
that come before it."

End quote, relying upon precedent of long-standing, the Tennessee Valley Municipal Gas Association versus Federal Energy Regulation Commission decision, 140 Fed. 3rd, 1085, yet another D.C. Circuit opinion at 1088.

The EPA has expertise in deciding TSCA petitions, and the court defers in this case to the agency's determination that a particular petition is not cognizable under section 21.

Because the EPA's determination that the 2012 submission was a petition for reconsideration rather than a petition for rulemaking cognizable under Section 21 was persuasive under Skidmore, the court grants defendants' motion to dismiss.

And that is all I have to say. I will issue an appropriate order. That is the court's opinion. The court is not going to issue a written opinion. That is it. I will issue an appropriate order essentially dismissing the complaint for the reasons stated during this session.

That is all I have to say. Thank you. Have a wonderful weekend.

Anything further before I leave?

MR. KEATS: No, Your Honor.

MR. HEMINGER: No, Your Honor.

THE COURT: Enjoy your weekend. Thank you.

**(Whereupon, the proceedings were adjourned.)**

- - - - -

CERTIFICATE OF COURT REPORTER

I certify that the foregoing is a correct transcript of the proceedings in the above-captioned case.

____________________________

SUSAN PAGE TYNER, CVR-CM
OFFICIAL COURT REPORTER